IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DISTRICT

CURTIS JAYJOHN,
      Plaintiff,

    v.                            Case No. 2:04-CV-471
                                   JUDGE EDMUND A. SARGUS, JR.
                                   Magistrate Judge Norah McCann King

CITY OF WELLSTON, et al.,
      Defendants.

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. #19). For the reasons that follow, the Court denies the Motion filed by Defendants City of Wellston, John R. Stabler, and Dennis Dupree, with respect to Plaintiff's first cause of action, which alleges wrongful termination in retaliation for Plaintiff's exercise of First Amendment rights. The Court grants the Defendants' Motion with respect to Plaintiff's second cause of action, alleged wrongful termination in violation of § 4113.52(B) of the Ohio Revised Code.

## I.

This matter arises as a result of Plaintiff Curtis Jayjohn's termination from employment. Plaintiff was appointed to the position of Chief of the Police Department of the City of Wellston on May 3, 2002. (*Complaint* at ¶ 7). Plaintiff was terminated from employment on June 7, 2002 upon written notification from Mayor John Stabler and Director of Public Safety and Service Dennis Dupree, who are also named as Defendants in this case. (*Id.* at ¶ 14). Plaintiff claims

that his termination was in retaliation for the exercise of his First Amendment right to free

speech. Plaintiff also claims that his termination violated the Ohio Whistleblower statute, R.C. §

4113.52. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

On April 6, 2000, prior to the Plaintiff's appointment as Chief of Police, an incident arose

in the City of Wellston, Ohio regarding a threat to a police officer's life. An individual named

Daniel Burton called the Wellston Police Department and told dispatcher Glen Webb that two

individuals, Darrell and Jody Detty, were going to kill Donovan "Tim" Halterman of the

Wellston Police Department. Webb then contacted Halterman and Officer Aaron Ervin[1] of the

Jackson County Police Department about the threat. Ervin and Halterman went to Burton's

apartment, and while there, another officer of the Wellston Police Department, Larry McKenzie,

arrived. When McKenzie left the apartment, Burton allegedly told Halterman and Ervin that

McKenzie was present during the conversation regarding Darrell and Jody Detty's alleged plan to

kill Halterman. It was also reported to Webb that, during the conversation about the threat

against Halterman, McKenzie stated that the killers needed to make it a head shot. (*Deposition

of Donovan Halterman* at 18, 58-61, 67; Depo. Exhibit 6).

Halterman was later approached by Darrell Detty[2]. Detty stated that he wanted to hand

over statements concerning the threat against Halterman's life. (*Halterman Depo.* at 18, 80-81).

Halterman then accompanied Detty to Mayor Stabler's office for this purpose. At the mayor's

office, Detty told Stabler about the threat made against Halterman including McKenzie's alleged

---

[1] Officer Ervin has submitted a statement asserting that he went to Burton's apartment after being contacted by Halterman. (Exhibit 37 to *Halterman Depo.*).

[2] Detty approached Halterman at a municipal courthouse. Detty was in the custody of police authority at the time. (*Halterman Depo.* at 18, 80-81).

involvement in the threat. (*Id.* at 12-13, 47-48, 64, 82; *Deposition of John Stabler* at 30-31;

(Defendants' Exhibit C; Plaintiff's Exhibit-Detty's Statement). Following this event, Halterman

approached the City of Wellston Safety/Service Director at the time, Gary George, and made him

aware of Detty's statements and the threats made against him. (*Halterman Depo.* at 21).

      After assuming his duties as Chief of the Police Department of the City of Wellston,

Plaintiff Jayjohn became aware of the threat allegedly made against Halterman and McKenzie's

alleged involvement in the threat. By this time, Halterman had resigned his employment at the

Police Department. (*Plaintiff's Affidavit* at ¶¶ 4-5). Plaintiff learned that written statements

concerning the threat had been given to Mayor Stabler. (*Id.* at ¶ 5). Plaintiff claims that when he

asked Mayor Stabler about the statements, Stabler informed him that no such statements existed.

(*Id.* at ¶ 6). Stabler contends that he told Plaintiff Jayjohn that he did not have the statements

anymore and that he had given the statements to the former Chief of Police, Mark Jacobs.

(*Stabler Depo.* at 30-34, 47). Mark Jacobs avers that Stabler did not give him any statements or

verbally discuss any matter concerning McKenzie or Halterman. (Exhibit A attached to

*Plaintiff's Affidavit*).

      On June 6, 2002, Plaintiff Jayjohn attended a regularly scheduled meeting of the Wellston

City Council[3]. During new business, Jayjohn addressed city council. (*Complaint* at ¶ 12).

First, Plaintiff spoke to city council about operational matters of the police department, including

installing a new criminal computer database and flooding in the police department office.

––––––––––––––––––––––

[3] As Chief of Police, Plaintiff was also the Sergeant-at-Arms at city council meetings. At the direction of
the presiding officer of the council, the Sergeant-at-Arms preserves order and decorum at meetings, and
by the order of the President, the Sergeant-at-Arms compels the attendance of absent members.
(Defendants' Exhibit C).

Plaintiff then addressed what appeared to be a member of the press present at the meeting regarding a newspaper article published concerning the discharge of McKenzie[4] and Plaintiff's role in the discharge.  Plaintiff explained to the reporter that he had not finalized the investigation of McKenzie.  Plaintiff mentioned that, as a part of his investigation, he had questioned Mayor Stabler about statements concerning McKenzie's alleged involvement in the threat made against Halterman.  Plaintiff told the reporter that Stabler had told him that he did not know of any statements.  (Defendants' Exhibit M).

At this point, Mayor Stabler interrupted Plaintiff, stating that they would discuss this topic later.  Plaintiff raised his voice and insisted that they discuss the topic at the meeting. Stabler then told Plaintiff that he was done for the day, and he should go home in his personal vehicle.  Plaintiff Jayjohn accused Stabler of obstructing justice and breaking the law. Ultimately, Plaintiff stopped talking shortly only after being told to do so by the  presiding officer of the city council.  (Defendants' Exhibit M).

Upon leaving the council meeting, Plaintiff took a police cruiser to the home of another city council member not present at the meeting, Tom Clark.  Plaintiff wanted to obtain a statement from Clark about a conversation Clark, Halterman, Stabler, and George had about the investigation of  McKenzie.  Plaintiff then returned to the police department and went home in his personal vehicle.  (*Plaintiff's Depo.* at 93-96).

The following day, Mayor Stabler requested Plaintiff to be present in a meeting during which Plaintiff's employment was terminated. (*Plaintiff's Affidavit* at ¶¶ 18-19).  Defendant

---

[4] Officer McKenzie was discharged for misconduct not involving the threat against Halterman. (*Plaintiff's Depo.* at 49; *Plaintiff's Affidavit* at ¶ 10).

4

Dennis Dupree, the Service Director for the City of Wellston, was also present at this meeting.
(*Plaintiff's Depo.* at 94). The letter of termination states that Plaintiff had been insubordinate by
disobeying Stabler's orders on two occasions: (1) Plaintiff's failure to listen to Satbler at the city
council meeting and (2) his refusal to go home immediately in his private vehicle. The letter
further states that, during Memorial Day weekend Plaintiff Jayjohn had violated his own policy
about frequenting liquor establishments because he had allegedly was a patron in a liquor
establishment for over an hour. (Defendants' Exhibit 1). According to Plaintiff, the Wellston
Police Department did not have a policy prohibiting officers from entering liquor establishment,
although Plaintiff did request that officers not drink in the local bar while off duty. According to
Stabler, the Wellston Police Department has a written policy prohibiting officers from entering
liquor establishments in their jurisdiction for their own private business. (*Stabler Depo.* at 50-
51). Plaintiff avers that, even if he was at a liquor establishment, he was not consuming alcohol
since he has never consumed an alcoholic beverage. (*Plaintiff's Affidavit* at ¶ 23). Finally, the
termination letter states that Plaintiff used new police cruisers to drive to his residence after
being informed by City Council that the vehicles were to be used by the officers on the streets for
standard patrol. (Defendants' Exhibit 1).

Two days after his termination, Plaintiff made a written request for a hearing before the
Wellston Civil Service Commission. The Commission denied the appeal on the basis that
Plaintiff was on a one-year probationary period as Chief of Police. (*Stabler Depo.* Exhibit 34).
Plaintiff claims that he was never informed of this decision. (*Plaintiff's Affidavit* at ¶ 21.)

Plaintiff originally filed this action in the Court of Common Pleas for Jackson County,
Ohio. Plaintiff alleged only a violation of R.C. § 4113.52, commonly referred to as the

5

Whistleblower Statute.  On April 2, 2004, Defendants filed a Motion for Summary Judgment, and on April 16, 2004, Plaintiff Jayjohn voluntarily dismissed his complaint in the Jackson County Court of Common Pleas.  On June 3, 2004, Plaintiff filed the instant action asserting a claim pursuant to 42 U.S.C. § 1983 for termination in retaliation of Plaintiff's exercise of his First Amendment right to free speech as well as a claim for violation of R.C. § 4113.52.  The Defendants now move for summary judgment on these claims.

## II.

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-159 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also*, *Matsushita Electronics Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby*, *Celotex*, and *Matshushita* have effected "a decided change in summary judgment practice," ushering in a new era in summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The Court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "show that there is some metaphysical doubt as to the material facts." *Id.* (*quoting Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### III.

**A. Plaintiff's First Amendment Claim**

**Standard of Review**

The First Amendment to the United States Constitution, applicable to state and local

governments through the Fourteenth Amendment, mandates against "abridging the freedom of speech . . . ." U.S. CONST. amend. I. The First Amendment's protection of free speech extends to speech by a public employee when the employee speaks as a citizen on matters of public concern. The First Amendment does not, however, protect an employee's speech made solely in the course of his or her public employment. *Connick v. Myers*, 461 U.S. 138, 147 (1983).

To state a claim for retaliation on the basis of exercise of First Amendment rights pursuant to 42 U.S.C. § 1983, Plaintiff must prove the following three elements: First, that he engaged in a constitutionally protected activity; second, that the Defendants' adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and third, that the adverse action was motivated, at least in part, as a response to the exercise of Plaintiff's constitutional rights. *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000) (citations omitted). If Plaintiff can establish these three elements of his First Amendment retaliation claim, the burden of persuasion then shifts to Defendants to show by a preponderance of the evidence, that they "would have taken the same action even in the absence of protected conduct." *Leary*, 228 F.3d at 737, quoting *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999).

Since Plaintiff is a public employee, he must make specific showings to demonstrate that his speech is constitutionally protected. First, he must show that his speech touched on matters of public concern. *Id.*, citing *Connick*, 461 U.S. at 146. Second, Plaintiff's interest "in commenting upon matters of public concern" must be found to outweigh "the interest of the State [or its subdivision], as an employer, in promoting the efficiency of the public service it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968). Whether

8

Plaintiff Jayjohn's speech is constitutionally protected is a question of law for this Court to determine. *Connick*, 461 U.S. at 148. In assessing a free speech case, it is the Court's obligation to make an independent examination of the whole record to assure against a forbidden intrusion on the field of free expression. *Bose Corp. v. Consumers Union of the United States, Inc.*, 466 U.S. 485, 499 (1984), quoting *New York Times v. Sullivan*, 376 U.S. 254, 285 (1964).

### Application

**1. Constitutionally Protected Activity**

**a. Public Concern**

In considering whether the speech is a matter of public concern, the Court is to examine the content, form, and context of the speech as revealed by the whole record. *Connick*, 461 U.S. at 147-48. In general, a matter of public concern is a matter of political, social, or other concern to the community. *Id.* at 146. The United States Court of Appeals for the Sixth Circuit has held that speech disclosing public corruption is a matter of public interest and therefore, deserves constitutional protection. *Solomon v. Royal Oak*, 842 F.2d 862, 865 (6th Cir. 1988). When opposing a motion for summary judgment, the Plaintiff must come forward with evidence in support of the implication of public corruption to survive the motion. The evidence must, at a minimum, sufficiently indicate the existence of facts which are disputed by the parties and which are material to the litigation to defeat a motion for summary judgment. *Barnes v. McDowell*, 848 F.2d 725, 734 (6th Cir. 1988).

The Court finds that Plaintiff has come forward with sufficient evidence in this regard. Plaintiff Jayjohn's statements at the city council meeting implicate matters of public corruption[5]. During the meeting, Plaintiff asserted that, as Mayor, Stabler lied to him about the existence of statements describing a threat against a former police officer's life. This alleged obstruction of justice by an elected official implicates public corruption and certainly amounts to a matter of public concern.

According to Plaintiff Jayjohn, when he first confronted Mayor Stabler about the statements made against Halterman's life, Stabler told him that he did not know of any statements. (*Plaintiff's Affidavit* at ¶ 6). Stabler himself admits that he was given statements concerning the threat made against Halterman's life. According to Stabler, he gave the statements to the then current Wellston Chief of Police, Mark Jacobs. (*Stabler Depo*. at 30-34, 47)[6]. Jacobs avers that Stabler never gave him any statements concerning threats made against Halterman. (Exhbit A, attached to *Plaintiff's Affidavit*). While the Court cannot resolve the issue of fact as to whether Stabler gave the statements to Jacobs or not, it is clear that the matter is one of public concern for First Amendment purposes.

---

[5]The question here is whether the <u>topic</u> raised by Plaintiff is a matter of public interest. The Court does not resolve, at this juncture, whether the claims made by the Plaintiff are true.

[6]In their Motion for Summary Judgment, Defendants contend that Mayor Stabler turned the statements over to former Wellston Safety/Service Director, George, who then called the Chief Deputy of the Jackson County Police Department, A.T. Wilkett. Wilkett conducted an investigation into McKenzie and he interviewed Halterman for the investigation. (*Motion for Summary Judgment* at 8). The Court notes that this assertion in the pleadings does not comport with Stabler's testimony on deposition that he gave the statements to Jacobs. (*Stabler Depo*. at 30-34, 47).

### b. *Pickering* Balancing Test

In considering whether Plaintiff Jayjohn's statements at the city council meeting are constitutionally protected, the Court must determine if his right to comment on matters of public concern outweighs the interest of the City of Wellston, as an employer, in promoting the efficiency of the public service it performs through its employees. *Pickering*, 391 U.S. at 568[7].

The Sixth Circuit has articulated factors for the Court to consider in applying the *Pickering* balancing test. In *Solomon v. Royal Oak*, 842 F.2d 862 (6th Cir. 1988), a former police officer brought a claim for violation of the First Amendment after he was discharged for informing a newspaper reporter about police department corruption. *Id.* at 864. In applying the *Pickering* balancing test, the Sixth Circuit examines the following factors: whether the speech relates to an issue of public interest and concern; whether it was likely to foment controversy and disruption; whether it impeded the department's general performance and operation; whether it affected loyalty and confidence; whether it was false and the employer could not have easily rebutted or corrected the error; and whether it was directed toward a person whom the speaker normally contacted within the course of daily work. *Id.*, citing *Pickering*, 391 U.S. at 569-73.

In *Solomon*, the Sixth Circuit concluded that plaintiff's interest in commenting on matters of public concern outweighed the Defendants' interest in maintaining efficient and orderly operations. *Id.* at 866-67. The Court found that the defendants failed to present substantial evidence demonstrating that the police officer's statements caused conflict, disruption or

---

[7] In *Pickering*, the Supreme Court reversed the ruling of the Supreme Court of Illinois holding that the dismissal of a teacher violated the teacher's right to freedom of speech. The teacher was dismissed from her position by the board of education for sending a letter to a local newspaper that was critical of the way the board and the district superintendent had handled past proposals to raise revenue for the school. *Id.* at 565.

impeded the police department's normal operation. The Court also stated that although the officer's statements directly questioned his superior's work performance, no evidence was presented to demonstrate that the disloyalty adversely affected the proper functioning of the department. The court highlighted that the statements were made because the police department was, in fact, not functioning properly. *Id.* at 866. The court noted that it was unclear from the record whether the officer's statement alleging obstruction of justice was true or false. The court found, however, that this issue was not dispositive because the appellants did not present any evidence that they attempted to correct or rebut the officer's statements, nor did they present substantial evidence that the officer intentionally made false statements. The court also concluded that, although the officer's statements were directed to an individual with whom he worked with daily, this factor alone did not override the public's interest in disclosure of corruption. *Id.* at 867.

After examining the factors of the *Pickering* balancing test in light of *Solomon*, this Court finds that Plaintiff's right to comment on matters of public concern outweighs the interest of the City of Wellston, as an employer, in promoting the efficiency of the public service it performs through its employees. As with the defendants in *Solomon*, Defendants in this case have not presented any evidence to demonstrate that Plaintiff Jayjohn's statements caused conflict, disruption or impeded the police department's or the City of Wellston's normal operations. There is also no evidence to demonstrate that Plaintiff Jayjohn's alleged disloyalty to Mayor Stabler adversely affected the proper functioning of the police department or the City of

12

Wellston[8].  Again, as in *Solomon*, Plaintiff Jayjohn made his statements because he apparently believed that the Mayor was not acting properly in allegedly concealing the statements concerning the threat against Halterman.  Whether Plaintiff Jayjohn's allegations of obstruction of justice are true or false, is not dispositive.

Defendants rely on *McMurphy v. the City of Flushing*, 802 F.2d 191 (6th Cir. 1986), in concluding that their interests outweigh Plaintiff Jayjohn's when applying the *Pickering* balancing test.  In *McMurphy*, a former police officer brought suit asserting, *inter alia*, that his First Amendment right to freedom of speech was violated when he was discharged on account of statements made to a newspaper.  The district court granted summary judgment for the defendants, and the Sixth Circuit affirmed the district court decision regarding the First Amendment claim.  Both courts found that the interests of the city outweighed the plaintiff's interest in freedom of speech.  *Id.* at 193.

The *Pickering* balancing test requires the examination of several independent factors.  *McMurphy* and the present case are similar in that both cases involve a public confrontation between a person working for the police and an executive officer of a city.  In both cases, because of the small size of the city governments, working relationships between the mayor of the city and a member of the police were important.

---

[8]In *Connick*, the Supreme Court stated that it is not a necessity for an employer to allow events to unfold to an extent that the disruption and the destruction of working relationship is manifested.  *Connick*, 461 U.S. at 152.  Nevertheless, if the employee's speech involves a matter of public concern, a strong showing of disruption and destruction of the working relationship must be demonstrated.  *Id.*  This Court has found, *supra*, that Plaintiff Jayjohn's speech involves a matter of substantial public concern.  Therefore, Defendants need to show that the speech caused disruption and destruction of working relationships. Defendants have not done so.

Nevertheless, in the Court's view, the conduct by the plaintiff in *McMurphy* is very different from that of Plaintiff in this case. The plaintiff in *McMurphy* engaged in a wide range of misconduct that was much more extensive than that of Jayjohn's. The conduct included: threatening a newspaper reporter, making statements ridiculing the city manager and chief of police, threatening the city manager and chief of police, making abusive and ridiculing comments about the city manager and chief of police to city council members, making groundless complaints about the city manager and other officials to state police and public prosecutor, making critical statements about the chief of police to another chief of police, posting cartoons disparaging the police department and writing anonymous inflammatory letter to the local press and councilmen. *McMurphy*, 802 F.2d at 193-194. Both the district court and the Sixth Circuit determined that most of the plaintiff's statements were made out of spite and frustration and only a small part of the plaintiff's statements were about public corruption so as to amount to a matter of public concern. *Id.* at 197-198. In contrast, in the present case, Plaintiff Jayjohn's conduct consisted only of his statements made at the city council meeting. Thus, the Court is not persuaded that the decision reached in *McMurphy* applies to the instant action.

The Defendants also assert that Plaintiff Jayjohn conducted a rogue investigation into the threats made against Halterman's life, and this should be considered in determining whether Defendants' interests outweigh Plaintiff Jayjohn's interest in freedom of speech. In *McMurphy*, the district court and the Sixth Circuit recognized that the plaintiff did not follow regulations or file formal reports in connection with his investigations and campaign to have the city manager charged criminally. This fact played a role in leading district court to conclude that the plaintiff wanted to get rid of the city manger and police chief instead of serve a public purpose, and it also

14

led the district court to conclude that the his investigations were disruptive and destructive to working relationships. *Id.* at 198.

In the Court's view, the existence of a rogue investigation, even if true, does not outweigh the other facts that must be considered. In the present case, there is insufficient evidence to demonstrate that Jayjohn's investigation was improper. Aside from summary allegations, the Defendants' only evidence in support of the rogue investigation assertion is a statement made by former officer Halterman that officers are not supposed to investigate one of their own. (*Halterman Depo.* at 46). This does not lead the Court to alter its conclusion that Plaintiff's right to comment on matters of public concern outweighs any interest on the part of the City of Wellston.

### 2. Adverse Action

The second element of a claim of First Amendment retaliation requires Plaintiff to show that the Defendants' adverse action caused him to suffer injury that would likely chill a person of ordinary firmness from continuing to engage in protected activity. *Leary v. Daeschner*, 228 F.3d 729, 737 (6th Cir. 2000). In this case, the Court finds that a jury could determine that Plaintiff's termination is an injury that would chill an ordinary person from continuing to engage in speech of the kind Plaintiff engaged in. Indeed, the Sixth Circuit has held that employment termination is an injury that would chill an ordinary person from continuing to engage in speech. *See Cockrel v. Shelby County School Dist.*, 270 F.3d 1036, 1055 (6th Cir. 2001.)

### 3. Motivating Factor

The third element to Plaintiff's First Amendment retaliation claim requires a showing that Defendants' decision to discharge Plaintiff was motivated, at least in part, by the exercise of his free speech rights. *Leary*, 228 F.3d at 737. The Sixth Circuit has stated that "the nonmoving party may not rely on the mere fact than an adverse employment action followed speech that the employer would like to prevent. Rather, the employee must link the speech in question to the defendant's decision to dismiss her." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 144 (6th Cir. 1997) (citations omitted). To survive Defendants' motion for summary judgment, Plaintiff Jayjohn must present sufficient evidence to allow a reasonable factfinder to conclude, by a preponderance of the evidence, that his speech, at least in part, motivated the Defendants' decision to discharge him. *Id.*

The Court finds that genuine issues of material fact exist as to whether Plaintiff Jayjohn's discharge was motivated, at least in part, by his statements at the city council meeting. Plaintiff Jayjohn accused Mayor Stabler of obstruction of justice by allegedly lying to him about his knowledge of certain statements given to Stabler regarding the threat to officer Halterman. (*Plaintiff's Affidavit* at ¶ 6). Such an accusation is serious and could have been embarrassing to Mayor Stabler, especially considering that the statements were made in front of city council. Plaintiff Jayjohn has come forward with sufficient evidence to call into question the truthfulness of Stabler's assertion about what he did with statements allegedly given to him by Detty. (*Id.* at ¶ 9, Ex. A.)[9]. The Court also finds that the temporal proximity between Plaintiff Jayjohn's speech

---

[9]The Court recognizes that an investigation into the alleged obstruction of justice by Stabler revealed that there was not sufficient evidence to bring criminal charges. (Defendants' Exhibit G). Since the investigation was not concluded at the time of the council meeting, the fact that no charges were brought

16

and his discharge could lead a reasonable jury to conclude that the adverse action was motivated, in part, by Plaintiff's speech[10].

### 4. Same Action in Absence of Protected Conduct

Because Plaintiff Jayjohn has successfully established, for purposes of summary judgment, the elements necessary for his claim of retaliation in violation of the First Amendment, the burden of persuasion shifts to Defendants. Defendants must demonstrate, by a preponderance of the evidence, that they would have discharged Jayjohn even if he had not engaged in constitutionally protected activity. *Leary*, 228 F.3d at 737.

The Court finds that genuine issues of material fact exist as to whether the Defendants would have taken the same action in the absence of the allegedly protected conduct. Although Defendants assert that Plaintiff was discharged for insubordination, the one act of insubordination alleged is Plaintiff's failure to stop speaking at the city council meeting as directed by Mayor Stabler. (*Motion for Summary Judgment* at 32). The Plaintiff's statements at the meeting, as noted *supra*, involved matters of public concern and are protected by the First Amendment. Such statements, for purposes of summary judgment, cannot be a legitimate basis for discharge.

Defendants also argue that Plaintiff was discharged, in part, because he violated his own policy prohibiting officers from frequenting liquor establishments in Wellston. (*Id.* at 34). Plaintiff Jayjohn avers, however, that he has never consumed a alcoholic beverage. (*Plaintiff's*

---

sometime later is of no moment as to Plaintiff's speech at the meeting.
[10] Temporal proximity has been used by the Sixth Circuit as a factor to consider when determining if Defendants' decision to discharge Plaintiff was motivated, at least in part, by the exercise of his free speech rights. *See e.g. Cockrel v. Shelby County School Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).

*Affidavit* at ¶ 23). Plaintiff also asserts that he never instituted a policy of prohibiting officers from entering liquor establishments in Wellston, but he did request his officers not to drink in the local bar while off duty. These are matters to be resolved by a jury.

Defendants argue that another reason for Plaintiff Jayjohn's discharge was his use of a new police cruiser to drive to his residence after he was informed by city council that the vehicles were to be used by the officers on the street for standard patrol. (*Motion for Summary Judgment* at 34). Defendants fail to produce evidence demonstrating that city council did, in fact, inform Jayjohn of this policy or that city council instituted such a policy. Plaintiff Jayjohn contends that he did not inappropriately drive the police cruisers. (*Plaintiff's Depo.* at 156). Again, these are matters for resolution by a jury.

In sum, the Court finds that genuine issues of material fact exist as to whether Defendants would have taken the same adverse action in the absence of Plaintiff's speech.


### B. Qualified Immunity

In moving for summary judgment, Defendants argue that they are entitled to qualified immunity on Plaintiff's First Amendment claim. The Supreme Court has held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The first step in a qualified immunity analysis is to determine whether Defendants' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If a

18

constitutional violation is found, the Court must then decide whether a reasonable official would, at the time the act was committed, understand that his conduct violated a right. *Id.* A government official will be entitled to immunity as long as the conduct does not violate a clearly established right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit has observed that a right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violations occurred. *Durham v. Nu'man*, 97 F.3d 862, 866 (6th Cir. 1996), citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988).

As stated *supra*, genuine issues of material fact exist as to whether Defendants' act of discharging Plaintiff was in retaliation for the exercise of his First Amendment right to free speech. The law is well-established that public employees have a right speak on issues about public corruption. *See Solomon*, 842 F.2d 862 at 865. Thus, if a constitutional violation is shown, the Court has little difficulty concluding that a reasonable official would have recognized that retaliation could not be taken against Plaintiff Jayjohn for making statements about public corruption. Accordingly, the Court concludes that Defendants are not entitled to the defense of qualified immunity.

### C. Ohio Revised Code § 4113.52: Whistleblower Protection

In addition to his First Amendment retaliation claim, Plaintiff asserts a claim under the Whistleblower provision of the Ohio Revised Code, § 4113.52. The statute protects against retaliation against an employee for reporting violations of state or federal law.   Under §

19

4113.52(A)(1), if an employee becomes aware of a violation, "the employee orally shall notify

the employee's supervisor or other responsible officer of the employee's employer of the violation

and subsequently shall file with that supervisor or officer a written report that provides sufficient

detail to identify and describe the violation." Then, if after twenty-four hours the employer fails

to correct the violation or make a good faith effort to do so, the employee may file

> a written report that provides sufficient detail to identify and describe the violation
> with the prosecuting authority of the county or municipal corporation where the
> violation occurred, with a peace officer, with the inspector general if the violation
> is within the inspector general's jurisdiction, or with any other appropriate public
> official or agency that has regulatory authority over the employer and the industry,
> trade, or business in which the employer is engaged.

R.C. § 4113.52(A)(1)(a).

If the employee makes a report, then the employer has twenty four hours to notify the

employee, in writing, of any effort to correct the alleged violation. § 4113.52(A)(1)(b). Section

4113.52(B) prohibits an employer from taking disciplinary or retaliatory action against an

employee for making a report under § 4113.52(A).

Plaintiff claims that a week prior to his termination, he met with the prosecuting attorney

for Jackson County, Ohio and presented investigatory materials on two topics concerning Mayor

Stabler: (1) alleged obstruction of justice in connection with the threat to officer Halterman; and

(2) alleged diversion of police department training funds for Stabler's own private use.

(*Complaint* at ¶ 26). Plaintiff claims that his termination was motivated, at least in part, by

presenting these matters to the prosecutor. Therefore, Plaintiff seeks protection under the

Whistleblower statute.

In moving for summary judgment, the Defendants argue that Plaintiff has failed to

comply with the specific procedure of the Whistleblower Statute. Indeed, Plaintiff comes

forward with no evidence to demonstrate that he orally notified or submitted a written report to anyone at the City of Wellston regarding the alleged violations of law by Mayor Stabler. Although Plaintiff relies on the fact that he met with the prosecuting attorney to supply investigatory materials, this falls short of the statute's specific requirements. Strict compliance with § 4113.52 is necessary to gain protection under the statute. *Contreras v. Ferro Corp.*, 73 Ohio St.3d 244 (1995). Since Plaintiff has not strictly complied with the statute, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's state law claim under § 4113.52.

## IV.

For the foregoing reasons, the Defendants' Motion for Summary Judgment **(Doc. #19 and #28**[11]**)** is **GRANTED in part and DENIED in part.**

### IT IS SO ORDERED.

9-30-2005
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

---

[11]Document number 28 is a supplemental motion which includes pages inadvertently omitted by Defendants in Document number 19.

21